*2001-NMCA-006*

18 P.3d 1063

**In the Matter of Ruben D., A Child. Respondent–Appellant.**

No. 20,209.

Court of Appeals of New Mexico.

Dec. 18, 2000.

Certiorari Denied No. 26,752, Feb. 5, 2001.

Patricia A. Madrid, Attorney General, Arthur W. Pepin, Assistant Attorney General, Santa Fe, for Appellee.

Phyllis H. Subin, Chief Public Defender, Jennifer R. Albright, Assistant Appellate Defender, Santa Fe, for Appellant.

## *OPINION*

BOSSON, Judge.

{1} Ruben D., a juvenile, appeals an order of the children's court extending legal custody of the Children, Youth and Families Department (CYFD) over him for a year past his initial two-year commitment. *See* NMSA 1978, § 32A-2-23(D) (1995). Ruben argues that the order was improper because (1) the court was without authority to commence proceedings *sua sponte* to extend his commitment, (2) the court lacked jurisdiction to extend his custody with CYFD after the Juvenile Parole Board (JPB) had issued a certificate of discharge, (3) the applicable time limits for such a hearing did not allow an order extending his commitment to be entered after the first order had expired, and (4) the evidence failed to justify extending his commitment. Not persuaded by Ruben's arguments, we affirm.

## BACKGROUND

{2} Ruben is a delinquent child. His delinquency adjudication followed a series of referrals to CYFD, which included substance abuse and a physical altercation with his mother. These referrals culminated in CYFD petitioning the court to adjudicate Ruben a delinquent child for having committed a burglary, and the court did so on January 28, 1997. The court's disposition transferred legal custody of Ruben to CYFD for long-term commitment, measured by statute as an indeterminate period not to exceed two years. *See* NMSA 1978, § 32A-2-19(B)(2)(b) (1996). In its disposition, the court expressly reserved jurisdiction to extend Ruben's commitment. According to the original disposition, CYFD's custody was to expire on January 28, 1999. The validity of the original two-year commitment is not at issue in this appeal.

{3} In September 1998, CYFD decided not to request an extension of Ruben's commitment. In preparation for terminating Ruben's commitment, CYFD forwarded a letter to the JPB outlining its decision to allow its custody to expire. After CYFD sent the letter, Ruben escaped from the Boy's School for a period of two days. At that time, Ruben's escape did not alter CYFD's recommendation to allow his commitment to expire. Although aware of the escape, the JPB issued a certificate of discharge on January 11, 1999, effective January 30, 1999, a date that reflects an extension of two days of commitment to make up for Ruben's escape.

{4} Meanwhile, the children's court scheduled a hearing to consider extending Ruben's commitment. Apparently unaware that the JPB was going to issue a certificate of discharge, the court issued notice to all concerned parties, drafted on January 7, 1999, that a re-commitment hearing would be held on January 20, 1999. At that hearing, Ruben's counsel argued that the court lacked jurisdiction to proceed in light of the certificate of discharge that the JPB had issued nine days earlier. The court denied Ruben's motion in light of the express reservation of jurisdiction in its original commitment order.

{5} Ruben's counsel also informed the court that he was unprepared to present a defense on that date because he had received notice of the hearing just the day before. The court began the hearing, but granted Ruben a continuance to call witnesses and offer testimony as soon as possible.

{6} At the end of the January 20 hearing, the court found that Ruben was not fit to be released and that CYFD had not arranged for a suitable place for Ruben to live if he were released. At that time Ruben was seventeen and his parent's whereabouts were unknown. The court entered an interim order on January 25 committing Ruben to CYFD's custody until Ruben could present his case. The second and final portion of the hearing was convened on February 23, 1999. Ruben renewed his motion that the court lacked jurisdiction to proceed, which was again denied. Ruben then presented his case, only to discover that CYFD had reversed its position. At the second hearing, CYFD requested an extension of Ruben's commitment so that he could be placed in a transitional living home; a home that would allow Ruben to develop the skills necessary to participate productively in society. When the hearing adjourned, the court found that it was in the best interests of both Ruben and the community to extend his commitment to CYFD for another year. An order to that effect was entered on March 4, 1999.

## DISCUSSION

{7} Ruben raises issues that involve questions of statutory interpretation. We review such questions de novo. *See In re Zac McV.*, 1998–NMCA–114, ¶ 5, 125 N.M. 583, 964 P.2d 144. When construing statutes that have unambiguous statutory language, "we must give effect to that language and refrain from further statutory interpretation." *State v. Jonathan M.*, 109 N.M. 789, 790, 791 P.2d 64, 65 (1990). If statutory language is ambiguous, however, we consider the legislative purpose behind the statute in conjunction with all the provisions of the children's code to resolve its meaning. *See In re Zac McV.*, 1998–NMCA–114, ¶ 10, 125 N.M. 583, 964 P.2d 144.

**Whether the Children's Court May Convene a Hearing to Extend Commitment Without a Motion From Either CYFD or the Child**

{8} Ruben's initial argument is that the court lacked jurisdiction to convene a hearing *sua sponte* to consider extending his commitment. Ruben contends that statutory law divested the court of jurisdiction once Ruben was transferred to CYFD's custody. His argument is based on Section 32A–2–23(A), which states that a "judgment transferring legal custody of an adjudicated delinquent child to an agency responsible for the care and rehabilitation of delinquent children divests the court of jurisdiction at the time of transfer of custody." Ruben acknowledges that despite the divestiture of jurisdiction in subsection (A), the court retains jurisdiction under subsections (D), (E), (F), and (G) of Section 32A–2–23 to hold hearings to extend or terminate a child's commitment. He argues that those subsections, and more importantly the court's jurisdiction thereunder, can be invoked only when the child, or an executive-branch actor such as the children's court attorney or CYFD, files a written motion with the court. Under Ruben's interpretation of Section 32A–2–23, the court must defer to the judgment of executive actors to decide whether an extended commitment "is necessary to safeguard the welfare of the child or the public interest." Section 32A–2–23(D).

{9} Ruben's view of the court's jurisdiction is overly restrictive. In *In re Zac McV.*, 1998–NMCA–114, ¶ 14, 125 N.M. 583, 964 P.2d 144, we interpreted subsection (F) of Section 32A–2–23, which allows the court to terminate or extend a child's commitment, to include either motions for modification filed by CYFD or similar action taken *sua sponte* by the court. Under *In re Zac McV.*, the court need not wait for a party to file a motion for the court to extend a commitment under subsection (F). *See id.* ¶ 14. We believe the legislature intended the same for subsection (D), which grants the court similar authority to modify a prior commitment order.

{10} We recently outlined the role of the children's court in handling dispositions of delinquent children. *See State v. Adam M.*, 2000–NMCA–049, 129 N.M. 146, 2 P.3d 883. In *Adam M.*, we held that the children's court lacked statutory authority to order consecutive commitments in a single disposition. *See id.* ¶ 10. In so deciding, we recognized that the children's code envisioned a flexible, indeterminate commitment process; one that

allows the court to "address[ ] the rehabilitative purpose of a long-term commitment by permitting the children's court to extend its judgment of commitment for additional periods of one year each until the child reaches the age of twenty-one." *Id.* We decided that consecutive commitments were impermissible because the children's code gave the court discretionary authority to lengthen a commitment only at the end of a long-term disposition. According to our interpretation of the children's code, "the children's court must exercise its discretion over a long-term commitment at the end of the commitment, after reviewing a record of the child's performance while committed, instead of at the beginning when the court has less information before it. The legislature has made this choice." *Id.*

{11} We remain steadfast in this interpretation of the code. The code intended the court to tailor a disposition to the specific needs of a child, and the legislature implemented its intent by granting the court power to review a child's progress in the custody of CYFD at the end of a commitment period. *See id.* Periodic review by the court provides a check on a child's improvement, and allows the court to extend a commitment, if necessary, to ensure that the rehabilitative purpose of the code is met. *See id.* To the extent Section 32A–2–23(D) & (F) remain ambiguous regarding the role of the court in extending a commitment order, we now make the import of our discussions in *In re Zac McV.* and *Adam M.* expressly clear. We hold that the children's code grants the court jurisdiction and authority to extend a child's commitment on its own motion under Section 32A–2–23(D) & (F). In this case, therefore, the court's express reservation of jurisdiction to review a commitment order is irrelevant.

{12} Ruben's reliance on our language in a former opinion stating that "the children's court may not retain jurisdiction indefinitely" does not aid his cause. *State v. Carlos A.,* 1996–NMCA–082, ¶ 15, 122 N.M. 241, 923 P.2d 608. *Carlos A.* concerned the court's ability to modify a disposition on a child's motion under Section 32A–2–23(G). *See Carlos A.,* 1996–NMCA–082, ¶ 5, 122 N.M. 241, 923 P.2d 608,. The quoted language speaks to the court's ability to entertain a child's mo-

tion to reconsider a disposition after the thirty-day limit in subsection (G) has expired. The language does not address the court's ability to extend a commitment on its own under subsections (D) or (F). *See In re Zac McV.,* 1998–NMCA–114, ¶¶ 14–16, 125 N.M. 583, 964 P.2d 144. Moreover, *Carlos A.* was decided as a matter of preservation, not jurisdiction. *See Carlos A.,* 1996–NMCA–082, ¶ 15, 122 N.M. 241, 923 P.2d 608.

## Whether the Children's Court Retained Jurisdiction After the JPB Issued a Certificate of Discharge

{13} Ruben also insists that the court lost jurisdiction to extend his commitment once the JPB issued his certificate of discharge. Ruben seeks to take advantage of a feature in the code that separates the authority to commit a child, which lies in the court, from the authority to release a child, which is granted to the JPB. *Compare* § 32A–2–19(B)(2) (authorizing the court to commit a child to the custody of CYFD), *and* § 32A–2–23(D) & (F) (authorizing the court to extend a child's commitment), *with* § 32A–2–23(A)(1) (placing the "exclusive power to parole the child" in the JPB). Seizing on this feature of the code, Ruben urges us to accept his proposition that the legislature purposefully designed the authority of the JPB to trump the power of the court, once custody is transferred to CYFD. *See* § 32A–2–23(A). We are unpersuaded that the legislature intended such outcome.

{14} The statutory divestiture of jurisdiction in subsection (A) of Section 32A–2–23 "relates specifically to the jurisdiction to decide particular programs or placements for the child." *In re Augustine R.,* 1998–NMCA–139, ¶ 6, 126 N.M. 122, 967 P.2d 462; *see also* § 32A–2–19(B)(2); *In re Zac McV.,* 1998–NMCA–114, ¶ 13, 125 N.M. 583, 964 P.2d 144; *Health & Soc. Servs. Dep't v. Doe,* 91 N.M. 675, 677, 579 P.2d 801, 803 (Ct.App. 1978) (holding, under former code, that the court had no authority to order placements or programs for a child). The divestiture of jurisdiction to oversee the rehabilitation of a child, however, does not translate to the court's loss of all jurisdiction over a child's case. Although the children's code purpose-

fully designates roles for given entities, it gives the court the "opportunity to address [extending a] commitment at the conclusion of a long-term commitment." *Adam M.*, 2000–NMCA–049, ¶ 11, 129 N.M. 146, 2 P.3d 883. The children's code clearly grants the court jurisdiction to extend a commitment and, under the facts of this case, that authority exists even in the face of a certificate of discharge by the JPB.

■ {15} The JPB is an institution primarily concerned with making parole decisions for delinquent children *before* a commitment expires. *See* NMSA 1978, § 32A–7–6 (1993) (defining the powers and duties of the JPB); *see also Adam M.*, 2000–NMCA–049, ¶ 12, 129 N.M. 146, 2 P.3d 883. The legislature has also conferred upon the JPB the authority to release a child, without parole, once the rehabilitative goal of the order is met. *See* § 32A–2–23(A)(1) & (C). Vested with a statutory directive to supervise children leaving the care of CYFD, the JPB is empowered with investigative tools so that it can monitor a child's rehabilitation and determine whether early parole or release is warranted. *See* § 32A–7–6(A)(2) and (3) (granting the JPB the authority to "conduct or cause to be conducted investigations, examinations, interviews, hearings" and "summon witnesses, books, papers, reports, documents or tangible things and administer oaths"). However, the court is not excluded from the JPB's decision-making. The JPB must notify the court at "least thirty days before ordering any parole." *See* § 32A–7–6(B). Likewise, the JPB is to promptly report to the court a child's release or termination of parole if it occurs before the expiration of a commitment order. *See* § 32A–2–23(C). These provisions invite a dialogue between the court and the JPB regarding a child. However, the ultimate decision to grant parole or an early release lies with the JPB. *See* § 32A–7–6(B) ("The judge may express his views on the child's prospective parole, either in writing or personally, to the board, but the final parole decision shall be that of the board."). Thus, when the JPB is acting to parole or release a child *before* the expiration of a commitment order, it has exclusive authority to do so.

{16} The children's code treats the JPB's authority in the present situation somewhat differently. Unlike an early release or parole, the JPB *must* release a child at the expiration of a commitment order. *See* § 32A–2–23(B) ("[P]rotective supervision shall remain in force for an indeterminate period not to exceed the term of commitment from the date entered."). Because the JPB's actions were dictated by the terms of the court's original commitment, it did not invoke its "exclusive power to parole or release" before the expiration of the commitment order. Section 32A–2–23(A)(1). In cases such as this one, it is not the authority of the JPB, but the authority of the court as reflected in the terms of the initial commitment order that governs a child's release.

{17} The record here buttresses the conclusion that the JPB certificate of discharge did nothing more than formally acknowledge the termination of Ruben's commitment order. If the JPB had invoked its exclusive authority to parole Ruben before the expiration of his commitment, it would have notified the court. But the court never received such notice. Similarly, early parole would have required Ruben to appear before the JPB for an interview, which never happened. *See* § 32A–7–6(C). Under these facts, it is evident that the JPB never invoked its exclusive discretion to grant Ruben an early release; it only acknowledged the limitations imposed by the court to hold Ruben any longer. Therefore, we hold that the court's jurisdiction to extend Ruben's commitment was not affected by the JPB's certificate of discharge.

**Time Limitations for Completing a Recommitment Hearing**

■ {18} Ruben asserts that the court's extension order of March 4, 1999, must be reversed because it was filed after his original commitment had expired. His argument rests on the statutory language stating, "*Prior to* the expiration of a long-term commitment . . . the court may extend the judgment for additional periods of one year . . . ." Section 32A–2–23(D) (emphasis added). Accordingly, Ruben urges us to overrule *State v. Doe*, 93 N.M. 748, 750, 605 P.2d 256, 258

(Ct.App.1980), which held that a re-commitment hearing can be held up to thirty days after the expiration of the initial commitment order. *Doe* is based on statutory language which directs the court to "proceed to a hearing in the manner provided for hearings on petitions alleging delinquency," Section 32A–2–23(F), and its holding conflicts with the language of subsection D. Ruben asserts that the plain meaning of "[p]rior to the expiration of a long-term commitment" must prevail. Section 32A–2–23(D). Ruben's argument is not without force; however, under the facts of this case it was waived.

{19} The court drafted its notice on January 7 for the hearing to be held on January 20, 1999. The children's court attorney received notice by facsimile the same day it was drafted. On January 20, 1999, the day of the hearing, Ruben's counsel stated that he received notice just the day before and counsel was unprepared to present a case. We are not informed why Ruben's counsel failed to receive notice earlier, but the record reveals that notice was sent to the public defender's office no later than January 13, 1999.

{20} Because Ruben's counsel was unprepared, the court entertained a motion to continue the hearing allowing Ruben an opportunity to call witnesses. Counsel informed the court that he would be "more than happy to set this up for a later hearing," when he could rebut evidence offered to extend Ruben's commitment. The court ruled that it would begin the hearing that day to determine whether Ruben's commitment should be extended, but the court also granted Ruben a continuance to call witnesses and offer testimony at a subsequent hearing to be conducted as soon as possible. A second and final hearing was held for that purpose on February 23, 1999. On March 4, 1999, the court entered its order extending Ruben's commitment for an additional year.

{21} Ruben complains that the order extending his commitment must be reversed because it was entered after his commitment had already expired, contrary to statute. However, counsel never made this argument to the children's court, nor did counsel request the court to rule on the application to

the proceedings of the "prior to" language in Section 32A–2–23(D) to the proceedings. Under these circumstances, the issue was not preserved for appellate review. *See* Rule 12–216(A) NMRA 2000 ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked . . . ."). Preservation requires a party to apprise the court of possible error in a timely and specific manner so that the court can prevent it. *See In re Candice Y.*, 2000–NMCA–035, ¶ 20, 128 N.M. 813, 999 P.2d 1045. If the court had been properly alerted that the commitment order's expiration date would bar subsequent proceedings, it still would have had ten days to recommence the hearing before the expiration date.

{22} The court granted Ruben a continuance so that he could prepare and present his case; everyone else was ready to proceed on January 20, 1999. Although we do not believe a child waives the right to a timely hearing simply by obtaining a continuance, once Ruben requested and received his continuance, he was obliged to inform the court that subsection (D) posed a problem.

■ {23} "The procedural rules applicable to adjudicatory hearings are applicable to motions to extend custody." *Doe*, 93 N.M. at 750, 605 P.2d at 258. We acknowledge that the time limitations imposed by the children's code are jurisdictional, and when they are not met, dismissal is required. *See* Rule 10–226(E) NMRA 2000. However, the court may extend the time for a hearing upon a showing of good cause. *See* Rule 10–226(C). In this case, the court granted Ruben an extension of time so that he could fully prepare his case. Under the circumstances, continuing the hearing for Ruben's benefit constituted good cause to extend the jurisdiction of the court under Rule 10–226. *See State v. Doe*, 90 N.M. 568, 571, 566 P.2d 117, 120 (Ct.App.1977) (outlining good cause under former code).

**Sufficiency of Evidence to Extend the Commitment**

■ {24} As his final argument, Ruben asserts that the evidence failed to justify extending his commitment. We disagree.

The record reflects that Ruben did not make any progress in his rehabilitation for the first eighteen months of his commitment. Not until September 1998, when Ruben became aware that his stay at the Boy's School was about to end, did Ruben begin to demonstrate improvement. The record also demonstrates that Ruben had anger management problems, leading to at least seventeen instances which resulted in disciplinary isolation. The court questioned the sincerity of Ruben's rehabilitative efforts as his violent outbursts continued after he completed anger management classes. Ruben's inability to control his anger became apparent during the February hearing when an outburst caused an interruption in the proceedings and his removal from the hearing. When coupled with Ruben's November escape and his failure to obtain his graduate equivalency diploma (G.E.D.), the evidence was sufficient to find that an extension of Ruben's commitment was "necessary to safeguard the welfare of the child or the public interest." Section 32A–2–23(D).

{25}    Ruben insists that his deficiencies were not of his own making, but were due to CYFD's neglect. He contends that his disciplinary placements in isolation were caused by being forced to live in a dorm with members of a rival gang, where he had to fight for his life. Further, while in isolation he was offered no educational assistance in regard to working on his G.E.D., even though he was diagnosed with a moderate case of attention deficit disorder. Ruben argues that he cannot be punished with an extended commitment based on CYFD's own ineffectiveness. Ruben did not raise this issue below, and we therefore will not consider it on appeal.

{26}    Ruben includes in his brief a passing reference that the court must establish beyond a reasonable doubt that extending his commitment was "necessary to safeguard the welfare of the child or the public interest." Section 32A–2–23(D). We will not address the burden of proof argument because it was never presented to the children's court. *See* Rule 12–216(A).

## CONCLUSION

{27}    For the reasons discussed above, we affirm the order of the children's court extending Ruben's commitment to the custody of CYFD.

{28}    **IT IS SO ORDERED.**

WE CONCUR: WECHSLER and SUTIN, JJ.