2002-NMCA-047

45 P.3d 64

**In the Matter of GABRIEL M., Child–Appellant.**

**No. 22,107.**

Court of Appeals of New Mexico.

March 7, 2002.

Certiorari Denied, No. 27,443, April 22, 2002.

126

Phyllis H. Subin, Chief Public Defender, Vicki W. Zelle, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

Patricia A. Madrid, Attorney General, Santa Fe, NM, Jacqueline R. Medina, Assistant Attorney General, Albuquerque, NM, for Appellee State of New Mexico.

## OPINION

SUTIN, Judge.

{1} Gabriel M., a minor, was adjudicated a delinquent child based on the crimes of arson and intimidation of witnesses. We address the scope of the arson statute, NMSA 1978, § 30–17–5 (1970), and we address whether a juvenile can be adjudicated a delinquent child for violation of the intimidation of a witness statute, NMSA 1978, § 30–24–3 (1997), when an element of the intimidation offense requires a determination that the juvenile committed or possibly committed a felony offense. Given the circumstances here, we determine that Gabriel's actions are not covered by the arson statute and reverse that adjudication. Because of this reversal, we also reverse a restitution order. We affirm the adjudications for intimidation of witnesses.

## BACKGROUND

{2} Gabriel worked after school at K–Mart where he set fire to a rack of clothing in the store. The clothing and nearby merchandise were damaged, but there was no damage to the building structure. Gabriel was seventeen years old at the time of the events set out in this opinion. One evening, after straightening his area to his boss's satisfaction, Gabriel began walking around the store and visiting with co-workers, something he had previously been forbidden to do. While walking around, he was flicking his lighter, which he often did to relieve boredom. There was testimony that earlier in the day, he had altered the lighter, making the flame larger. During his perambulations, Gabriel ran into a pair of sisters, Valerie and Giovanna, also employed with K–Mart. He stopped to talk with them for a while and then continued on, still playing with the lighter.

{3} While there was a difference in evidence as to how Gabriel got under a rack of clothing in the store, Gabriel admitted that he flicked the lighter while under the rack. The flame caught the clothing on fire and he tried to put the fire out with his hands. He then walked away without reporting the incident.

{4} Gabriel apparently did not put the fire out completely as it flared up and was then reported. A loss prevention manager attempted to control the fire with extinguishers, but the sprinkler head immediately above the rack was activated. By the time the fire department arrived, the fire was out. The clothing on the rack was destroyed and other nearby merchandise was damaged either by extinguisher foam or water from the sprinkler.

{5} While the fire was being extinguished, all the employees waited outside. At one point, Gabriel approached the sisters and told them that if he got in trouble, he would know who told. Both girls testified they did not know what to make of the statement at first. They testified, however, that during the initial investigation, they did not tell the investigators everything because Gabriel was in the same room and watching them. They were more forthcoming when Gabriel left the room.

{6} As the fire investigation proceeded, Gabriel became convinced he would be searched. Fearing he would be blamed if

the lighter was found on him, Gabriel slipped it under a chair where he was sitting while waiting to be interviewed. At first Gabriel denied any involvement in the incident. Gradually, he admitted more and more, finally confessing he started the fire accidentally and tried to put it out.

{7} Following the investigation, Gabriel was charged with arson, tampering with evidence, and intimidating witnesses. After a bench trial, the court found that the State had proved the charges. The court determined Gabriel to be a delinquent child. *See* NMSA 1978, § 32A–2–3(B) (1996). The court ordered Gabriel to serve two years probation under the supervision of the juvenile authorities. The court also ordered Gabriel to pay restitution for the damaged goods. Gabriel now appeals all but the adjudication of tampering with evidence.

## DISCUSSION

### Arson

{8} Gabriel was charged with "maliciously [and] willfully starting a fire ... with the purpose of destroying or damaging ... property of another." § 30–17–5(A). He makes two sufficiency of the evidence claims: (1) there was no evidence that he acted willfully or maliciously in starting the fire; and (2) damaging personal property of another is not included in the crime of arson. We base our decision on Gabriel's second claim.

{9} Gabriel contends that damage to or destruction of personal property does not fall within the statutory definition of arson. The State argues that this issue was not raised below. It contends Gabriel, in his closing, only argued the evidence was insufficient with regard to his state of mind and did not argue that the evidence was insufficient to establish the element of property. Gabriel argues the question is fundamental and, therefore, need not be preserved below. *See State v. Stein*, 1999–NMCA–065, ¶ 9, 127 N.M. 362, 981 P.2d 295. We agree. Because it concerns the sufficiency of the evidence with regard to one of the elements of the crime, the issue is fundamental and can be raised for the first time on appeal. Rule 12–216(B)(2) NMRA 2002.

{10} Arson is defined as "maliciously or willfully starting a fire or causing an explosion with the purpose of destroying or damaging any building, occupied structure or property of another, or bridge, utility line, fence or sign." § 30–17–5(A). The statute further defines occupied structure as including "a boat, trailer, car, airplane, structure or place adapted for the transportation or storage of property or for overnight accommodations of persons or for carrying on business therein." § 30–17–5(C). The question is whether the phrase "or property of another" includes personal property, such as that damaged or destroyed here. We review questions of statutory interpretation de novo. *In re Ruben D.*, 2001–NMCA–006, ¶ 7, 130 N.M. 110, 18 P.3d 1063.

{11} In interpreting the meaning of a statute, we seek to ascertain the intent of the Legislature. *See State v. Bybee*, 109 N.M. 44, 44–45, 781 P.2d 316, 316–17 (Ct. App.1989). If the meaning of the words is unambiguous, we must give effect to that language and no further interpretation is necessary. *Ruben D.*, 2001–NMCA–006, ¶ 7, 130 N.M. 110, 18 P.3d 1063. If, however, the meaning of the words is ambiguous, then we must engage in interpretation of that language to determine the purpose intended by the Legislature.

{12} "A statute is ambiguous when it can be understood by reasonably well-informed persons in two or more different senses." *State v. Elmquist*, 114 N.M. 551, 552, 844 P.2d 131, 132 (Ct.App.1992). Here, the two parties present two different, yet reasonable, views of the language. Therefore, we believe the statute is ambiguous and requires interpretation.

{13} "In ascertaining legislative intent, [we] look to the language used but may also consider the history and background of the statute." *Bybee*, 109 N.M. at 45, 781 P.2d at 317. "At common law, arson is the wilful and malicious burning of the dwelling house of another." 3 Charles E. Torcia, *Wharton's Criminal Law* § 334 at 324 (15th ed.1995). "[I]t is an offense against the security of habitation or occupancy, rather than

against ownership or property." *Id.* § 334 at 325.

{14} This common law definition of arson has, over the years, been modified by statute, but the concept has remained the same. In New Mexico, the crime was first defined by statute in 1927. Three different sections described the malicious and willful burning of three different kinds of property: (1) a dwelling house or outbuildings, NMSA 1929, § 35–1401 (1927); (2) barns, factories, shops, churches and bridges, NMSA 1929, § 35–1402 (1927); and (3) certain personal property like boats, vehicles, grain, timber, etc., NMSA 1929, § 35–1403 (1927). Then in 1963, as part of the complete re-write of the Criminal Code, arson was defined as the "intentional damaging by any explosive substance or setting fire to any bridge, aircraft, watercraft, vehicle, pipeline, utility line, communication line or structure, railway structure, private or public building, dwelling or other structure." NMSA 1953, § 40A–17–5 (1963). This Court held that statute unconstitutional because it did not require willful or malicious behavior, but rather criminalized what could be completely innocent burning. *State v. Dennis*, 80 N.M. 262, 264–65, 454 P.2d 276, 278–79 (Ct.App.1969). The next year, the Legislature rewrote the arson statute to what it is today. *See* NMSA 1953, § 40A–17–5 (1970), *repealed by* NMSA 1978, § 30–17–5 (1970).

{15} We compare the earlier versions of the arson statute with the current version to help determine legislative intent. *See State v. Gonzales*, 78 N.M. 218, 219, 430 P.2d 376, 377 (1967). In the revisions that our Legislature has made to the arson statute, the property that falls within its ambit has been in the nature of structures for dwelling, working, or congregating, or for transportation. The current version limits the property to buildings, occupied structures, property of another, fences, bridges, and signs. § 30–17–5(A). Occupied structure is further defined to include boats, trailers, cars, airplanes, structures, or places "adapted for the transportation or storage of property or for overnight accommodations of persons or for carrying on business therein." § 30–17–5(C). In the different versions of the statute our Legislature has indicated no intent to include any personal property. "Property of another" is intended as a broad inclusionary phrase to include property not specifically described but considered an appurtenance or fixture to real property or structures in the nature of those more specifically described.

{16} In the same vein, we appropriately also turn to another statutory construction aid available to us in determining meaning. The rule of *ejusdem generis* states that where general words in a statute follow a designation or enumeration of particular subjects, objects, things, or classes of the same general character, sort, or kind, to the exclusion of all others, such general words are not to be construed in their widest extent, but are to be held as applying only to those things of the same general kind or class as those specifically mentioned. *See Black's Law Dictionary* 535 (7th ed.1999). Here, the general phrase "or property of another" follows the designation of building or occupied structure. Based on this rule of statutory construction, the property referred to does not include any and all property owned by another, but includes only property that could be viewed as a structure for dwelling, working, or congregating, or for transportation.

{17} The State argues that to give words in the statute this limited meaning is to render a large portion of the arson statute surplusage and meaningless. It argues the phrase "property of another" must be construed as a catch-all term intended to include any personal property. We believe that if it were intended as such a catch-all phrase, the Legislature would have worded the statute to make clear that it meant any and all property, both real and personal. The way the statute is written, the phrase more reasonably appears to apply only to structures similar to those listed.

{18} The State also points to a number of states that include personal property in their definition of arson. The statutes of those states, however, use the specific term "personal property." Thus, the fact there are states that include the burning of personal property as arson is not persuasive, since the

statutes specifically provide for it. Since our Legislature did not define arson to include the burning of personal property specifically, we believe it did not contemplate the burning of personal property to be included in the offense. *See State v. Begay,* 2001–NMSC–002, ¶ 6, 130 N.M. 61, 17 P.3d 434 (if Legislature intends to bring about a result, it would expressly do so).

{19} Yet another canon of statutory construction, *noscitur a sociis,* looks to the neighboring words in a statute to construe the contextual meaning of a particular word in the statute. *See In re Christopher K.,* 1999–NMCA–157, ¶ 3, 128 N.M. 406, 993 P.2d 120. In our arson statute, the phrase "property of another" follows "occupied structure," which is defined to include certain modes of transportation, structures, and places "adapted for the transportation or storage of property." § 30–17–5(A), (C). Thus, the context of the phrase includes properties that are not strictly buildings, but are other types of structures where a person might live, work, or store things. The words that follow "property of another" are bridge, fence, utility line, and sign. These are appurtenances or fixtures to real property. Using this canon of construction, we conclude we must reach the same result: that "property of another" includes those things that are either structures, fixtures, or appurtenances, but does not include personal property.

{20} Finally, we are required to construe criminal statutes in favor of the rule of lenity. *State v. Keith,* 102 N.M. 462, 465, 697 P.2d 145, 148 (Ct.App.1985). This rule requires us to narrowly construe a penal statute to give clear and unequivocal warning in language that people generally would understand concerning actions that would expose them to penalties. Under this rule, we believe it appropriate to narrowly construe the meaning of the phrase "property of another" as we have. If the Legislature intends any personal property, or personal property beyond the limited items specifically mentioned, to be included in the arson statute, it should specifically say so.

{21} We conclude Gabriel's action of lighting fire to merchandise in a store without damaging the physical structure of the store is not arson. Therefore, the arson adjudication must be reversed.

### Intimidation of Witnesses

{22} Gabriel contends the evidence was insufficient to prove he committed the crime of intimidation of a witness. In analyzing sufficiency of the evidence issues, our inquiry is "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Apodaca,* 118 N.M. 762, 765–66, 887 P.2d 756, 759–60 (1994) (citation and internal quotation marks omitted). Substantial evidence is "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *State v. Salgado,* 1999–NMSC–008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted). "Just because the evidence supporting the conviction was circumstantial does not mean it was not substantial evidence." *State v. Rojo,* 1999–NMSC–001, ¶ 23, 126 N.M. 438, 971 P.2d 829 (citation and internal quotation marks omitted).

{23} Intimidation of a witness is defined as "intimidating or threatening any person . . . with the intent to keep the person from truthfully reporting to a law enforcement officer . . . information relating to the commission or possible commission of a felony offense." § 30–24–3(A)(3). Gabriel argues that his statement to the sisters about knowing who told if he were caught was directed toward his fear of losing his job if his boss found out he was wandering around the store rather than staying in his area. He argues it was never his intent to keep them from talking to law enforcement about potentially incriminating conduct they may have witnessed. He further argues there was no evidence to show that his comment to the two girls was for the purpose of keeping them from reporting what they had seen.

{24} The trial court is not required to believe a defendant's testimony as to intent. *State v. Wynn,* 2001–NMCA–020, ¶ 6, 130 N.M. 381, 24 P.3d 816. Yet, in a

substantial evidence review, that disbelief cannot substitute for affirmative proof of the State's case. *Id.* We therefore examine the evidence to determine if the State presented proof sufficient to establish Gabriel's intent under the intimidation statute. That evidence can be circumstantial evidence. *Id.* ¶ 7.

{25} The girls testified that while standing outside after the fire, Gabriel approached them and said that if he got in trouble, he would know that it was because of them. While we recognize this is susceptible to the interpretation Gabriel gives it, looking at other testimony, we believe the trial court could have discounted Gabriel's contention that he was more concerned about his job than the possibility of criminal charges. The girls further testified they did not tell the fire marshal everything the first time they were interviewed. They testified that that was because Gabriel was in the same room, looking at them.

{26} Gabriel argues it was only later that the girls said he had scared them and that at the time of his statement, they were not afraid. That evidence conflicts, however, with the evidence that the girls were not initially truthful in their first interview when Gabriel was present in the room. Thus, it appears there is conflicting evidence regarding whether they were afraid to disclose information because of something Gabriel had said to them. This evidence, in addition to the evidence that Gabriel himself was not completely truthful during the investigation, is sufficient evidence from which the trial court could find that Gabriel had intimidated the girls into not giving information about seeing him near where the fire started.

{27} Gabriel also argues that because he could only be adjudicated a delinquent child and not convicted of a felony, the intimidation of a witness statute cannot apply to him. Although the State argues this issue was not raised below and cannot be addressed on appeal, it is a question of fundamental error that can be raised for the first time on appeal. *See Stein,* 1999–NMCA–065, ¶ 9, 127 N.M. 362, 981 P.2d 295.

{28} Gabriel points out that in order to convict him of this offense, it must be shown that the witness would give information about the commission or possible commission of a felony offense. Because he cannot be convicted of a felony, but only found to be delinquent, he argues the statute cannot apply to him. We disagree.

{29} A delinquent child is one who commits a delinquent act. § 32A–2–3(B). A delinquent act is any act "committed by a child that would be designated as a crime . . . if committed by an adult," including those punishable as felonies. § 32A–2–3(A), (A)(1)(k). A "felony" is defined as "an act that would be a felony if committed by an adult." § 32A–2–3(E). This definition supports the conclusion that juveniles can commit felonies.

{30} A delinquent offender is "a delinquent child who is subject to juvenile sanctions only and who is not a youthful offender or a serious youthful offender." § 32A–2–3(C). Gabriel was not determined to be a youthful offender or serious youthful offender. *See* § 32A–2–3(H), (I). He was a delinquent offender. *See* § 32A–2–3(C). However, the definition of a youthful offender found in Section 32A–2–3(I)(2) makes it clear that a delinquent offender can receive a felony adjudication even though he may be subject to juvenile sanctions only. The definition reads:

"youthful offender" means a delinquent child subject to adult or juvenile sanctions who is . . . fourteen to eighteen years of age at the time of the offense and adjudicated for any felony offense and who has had three prior, separate felony adjudications within a three-year time period immediately preceding the instant offense. The felony adjudications relied upon as prior adjudications shall not have arisen out of the same transaction or occurrence or series of events related in time and location. Successful completion of consent decrees are not considered a prior adjudication for the purposes of this paragraph[.]

§ 32A–2–3(I)(2). The three prior "separate felony adjudications" in Section 32A–2–3(I)(2) must have occurred at some time before the felony offense for which the delinquent child is to be adjudicated a youthful offender. Thus, under the youthful offender definition

in Section 32A–2–3(I)(2), a delinquent child cannot be adjudicated a youthful offender without having been adjudicated a delinquent offender based on felony adjudications. It necessarily follows that a delinquent offender can receive "felony adjudications." Viewing all pertinent definitions in Section 32A–2–3 as a whole and harmoniously, Gabriel can be adjudicated for the felony offense of intimidation of a witness as a delinquent offender subject to juvenile sanctions only.

{31} In addition, we very much doubt the Legislature in passing the Delinquency Act, NMSA 1978, §§ 32A–2–1 to –33 (1993, as amended through 1999), intended the result that a juvenile could never be held responsible for intimidating or threatening a person in violation of Section 30–24–3(A)(3). The purpose of the Children's Code is to shield juveniles in appropriate circumstances by removing "children who commit delinquent acts from 'the adult consequences of criminal behavior.' " *State v. Adam M.,* 2000–NMCA–049, ¶ 8, 129 N.M. 146, 2 P.3d 883 (quoting § 32A–2–2(A)). That purpose is maintained, if not furthered, by assuring that juveniles do not escape the consequences of their actions in the manner sought by Gabriel. *Cf. State v. Contreras,* 2002–NMCA–031, ¶¶ 12, 13, 131 N.M. 638, 41 P.3d 919 (2002) (holding the purpose of the Children's Code preserved, an absurd result avoided, and society protected by permitting the conviction of an adult who concealed a juvenile offender).

{32} Finally, the felony in the intimidation statute reflects the nature of the offense and should not be defined here by an adjudicatory and dispositional scheme applied to adult offenders. We are simply concerned with the nature of the act about which information is withheld. This interpretation is supported by our cases holding that a defendant may be convicted of intimidation of a witness even if he is "acquitted of any crime associated with the actions relating to the commission or possible commission of a felony." *State v. Perea,* 1999–NMCA–138, ¶ 7, 128 N.M. 263, 992 P.2d 276 (internal quotation marks omitted). Thus, the fact that Gabriel cannot be convicted of a felony as it is defined in the criminal statutes does not preclude a charge of intimidation of a witness.

{33} Our reversal of the arson conviction on the basis Gabriel's actions did not constitute the crime of arson does not affect the convictions for intimidation of a witness. The crime of intimidation requires only that Gabriel intimidated or threatened the sisters with the intent to keep them from truthfully reporting information relating to the possible commission of a felony. *See* § 30–24–3(A)(3). We are unconcerned with whether he could be either charged with or convicted of a felony. Rather, the question is whether the conduct about which the sisters had information was serious enough that it could have resulted in a felony charge. *See State v. Jones,* 39 N.M. 395, 397, 48 P.2d 403, 404 (1935) ("The question in the instant case is not the guilt or innocence of the respondent in the main case, nor the sufficiency of the information or the jurisdiction of the court, but whether the respondent is guilty of obstructing or interfering with the administration of justice.") (internal quotation marks and citation omitted). Here, the conduct of burning merchandise in the store was of such seriousness that it could result in felony charges such as criminal damage of more than $1000 to property. NMSA 1978, § 30–15–1 (1963). Gabriel's threats to the sisters were made in connection with that conduct.

{34} The evidence was sufficient to establish that Gabriel made a threat to the sisters in the hope of preventing them from reporting information relating to the possible commission of a felony. Therefore, we affirm the intimidation of a witness adjudications.

## Restitution

{35} Gabriel argues that the trial court abused its discretion in requiring him to make restitution. Pursuant to Section 32A–2–31(A), the court may order a child to pay restitution to the victim of his delinquent act. Here, Gabriel was ordered to pay K–Mart restitution for the arson. However, we reverse the arson charge, and there no longer exists a delinquent act to serve as the basis for the order of restitution. Therefore, the court's restitution order must be reversed.

CONCLUSION

{36} We reverse the adjudication of arson and the order of restitution based on the arson adjudication. We affirm the two adjudications of intimidation of a witness. We remand to the trial court for disposition consistent with this opinion.

{37} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and CELIA FOY CASTILLO, Judges.