OPINION VANZI, Judge. {1} The State of New Mexico appeals from the district court’s order granting Defendant’s motion for a protective order. The question presented is whether Defendant has a privilege to refuse to disclose, and to prevent others from disclosing, confidential communications he made to a licensed social worker for the purpose of diagnosis and treatment. We conclude that Defendant has this privilege pursuant to Rule 11-504 NMRA and can thus prevent both his social worker and his ex-wife from disclosing information he communicated during counseling sessions. In arriving at this result, we conclude that, even if they reasonably suspected that a child was being abused, neither Defendant’s social worker nor Defendant’s ex-wife was subject to the mandatory reporting requirement set forth in NMSA 1978, Section 32A-4-3(A) (2005) of the Abuse and Neglect Act, because the requirement does not apply to every person and because a social worker providing private counseling is not “acting in an official capacity” within the meaning of Section 32A-4-3(A). Accordingly, we affirm. BACKGROUND {2} Defendant was charged with four counts of criminal sexual contact of a minor in the second degree based on allegations that he had sexually assaulted his daughter. The State filed a notice of intent to call witnesses, in which it stated it intended to call Frederick Stearns, a licensed social worker who provided counseling to Defendant. Defendant filed a motion for a protective order seeking to bar the State from obtaining, and Stearns from disclosing, confidential communications made by Defendant to Stearns for the purpose of diagnosis and treatment. The State filed a response to Defendant’s motion, along with a motion to compel the disclosure of Defendant’s counseling records. {3} The district court granted Defendant’s motion following a hearing. The district court found that: (1) Defendant’s communications with Stearns are privileged under Rule 11-504; (2) the participation of Defendant’s ex-wife, Karen Solomon-Strauch, in some of the counseling sessions did not waive Defendant’s privilege; (3) there is no evidence that Defendant otherwise waived his privilege; (4) Stearns is not a mandatory reporter under Section 32A-4-3(A); and (5) because Stearns is not a mandatory reporter under Section 32A-4-3(A), the exception to the privilege set forth in Rule 11-504(D)(4) does not apply. {4} The State filed a motion to reconsider or, in the alternative, to clarify the order granting Defendant’s motion for a protective order. Following a hearing, the district court issued an order denying the State’s motion to reconsider and partially granting its motion to clarify. The district court ordered that Defendant’s ex-wife may testify that Defendant obtained counseling during a specific period of time, but she “is barred from testifying regarding the reasons ... Defendant sought counseling, the contents of any communications made during counseling sessions in which she was a participant, and the contents of any communications she and . . . Defendant had related to those sessions.” This appeal followed. DISCUSSION {5} The State contends that the district court erred in granting Defendant’s motion for a protective order because Defendant in this case may not invoke the privilege set forth in Rule 11-504(B). Rule 11-504(B) provides, in pertinent part, that “[a] patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications, made for the purposes of diagnosis or treatment.” That privilege, however, does not apply to “communications relevant to any information that the physician, psychotherapist or patient is required by statute to report to a public employee or state agency.” Rule 11-504(D)(4). {6} Relying on Rule ll-504(D)(4)’s exception to the privilege rule, the State first argues that Defendant cannot invoke the general rule of privilege to prevent Defendant’s social worker and his ex-wife from disclosing confidential communications because both the social worker and his ex-wife were subject to the mandatory reporting requirement set forth in Section 32A-4-3(A).[1] The State next argues that Defendant cannot invoke the privilege with respect to his social worker because the Legislature intended to exclude from Rule 11-504(D)(4) any information that a social worker may obtain regarding child abuse.[2] {7} We first consider whether Defendant’s social worker and Defendant’s ex-wife were subject to the mandatory reporting requirement set forth at Section 32A-4-3(A) of the Abuse and Neglect Act. We conclude that neither was subject to the mandatory reporting requirement and that, therefore, the exception set forth at Rule 11-5 04(D)(4) is inapplicable. We next consider whether the Legislature intended to exclude from the Rule 11-504(B) privilege any information that a social worker may obtain regarding child abuse. We conclude that it did not. {8} In analyzing these issues, our review is de novo. See State v. Ryan, 2006-NMCA-044, ¶ 41, 139 N.M. 354, 132 P.3d 1040 (“The application of Rule 11-504 and the law to the facts is reviewed de novo.”); see State v. Romero, 2006-NMSC-039, ¶ 6, 140 N.M. 299, 142 P.3d 887 (“Statutory construction is a question of law that is reviewed de novo.”). A. The Mandatory Reporting Requirement Set Forth in Section 32A-4-3(A) Does Not Apply to Defendant’s Social Worker and Defendant’s Ex-Wife {9} Section 32A-4-3(A) of the Abuse and Neglect Act states: Every person, including a licensed physician; a resident or an intern examining, attending or treating a child; a law enforcement officer; a judge presiding during a proceeding; a registered nurse; a visiting nurse; a school[]teacher; a school official; a social worker acting in an official capacity, or a member of the clergy who has information that is not privileged as a matter of law, who knows or has a reasonable suspicion that a child is an abused or a neglected child shall report the matter immediately to: (1) a local law enforcement agency; (2) the department; or (3) a tribal law enforcement or social services agency for any Indian child residing in Indian country. (Emphasis added.) The State makes two arguments. First, it argues that both Defendant’s social worker and Defendant’s ex-wife were subject to the mandatory reporting requirement set forth in this statute because it applies to “every person.” Second, the State argues that even if the mandatory reporting requirement does not apply to every person, Defendant’s social worker was still subject to the requirement because he was “acting in an official capacity” when he provided counseling to Defendant. We consider each argument in turn. 1. The Mandatory Reporting Requirement Does Not Apply to Every Person {10} The State contends that the words “every person” mean what they say — that every person is required to report suspected child abuse. According to the State, because both Defendant’s social worker and Defendant’s ex-wife are people who presumably had a reasonable suspicion that a child was being.abused, they were required to report their suspicions pursuant to Section 32A-4-3(A). Defendant, on the other hand, argues that the words “every person” do not actually mean every person, but mean the professionals specifically identified in Section 32A-4-3(A) and others like them. For the reasons that follow, we agree with Defendant. {11} In interpreting a statute, “[w]e are to read the statute in its entirety and construe each part in connection with every other part to produce a harmonious whole.” Key v. Chrysler Motors Corp., 1996-NMSC-038, ¶ 14, 121 N.M. 764, 918 P.2d 350. Our “principal command” is that we should “determine and effectuate the intent of the [Legislature using the plain language of the statute as the primary indicator of legislative intent.” State v. Juan, 2010-NMSC-041, ¶ 37, 148 N.M. 747, 242 P.3d 314 (internal quotation marks and citation omitted). “The words of a statute should be given their ordinary meaning, absent clear and express legislative intention to the contrary, as long as the ordinary meaning does not render the statute’s application absurd, unreasonable, or unjust.” Id. (alteration, internal quotation marks, and citation omitted). {12} Reading the statute in its entirety, we do not believe that the Legislature intended for every person to be subject to the mandatory reporting requirement of the Abuse and Neglect Act and, as a result, we do not give the words “every person” their ordinary meaning. Section 32A-4-3(A) specifically identifies ten categories of people who are subject to the mandatory reporting requirement: • licensed physician • resident or intern examining, attending or treating a child • law enforcement officer • judge presiding during a proceeding • registered nurse • visiting nurse • schoolteacher • school official • social worker acting in an official capacity • member of the clergy who has information that is not privileged as a matter of law The above list appears to include those professionals who are most likely to come into contact with — and can effectively identify — abused and neglected children during the course of their professional work. We apply the principle of ejusdem generis to this statute, and conclude that, despite the use of the words “every person,” the Legislature intended to impose an affirmative duty to report child abuse or neglect only on these professionals and others like them. To do otherwise would render the inclusion of these specific categories ofprofessionals essentially meaningless. {13} As our Supreme Court has explained, “New Mexico courts have long recognized the ejusdem generis principle of statutory construction, that where general words follow words of a more specific meaning, the general words are not construed in their widest extent but are instead construed as applying to persons or things of the same kind or class as those specifically mentioned.” State v. Nick R., 2009-NMSC-050, ¶ 21, 147 N.M. 182, 218 P.3d 868 (internal quotation marks and citation omitted). While it is less common, we agree with Defendant that this principle is applicable where the specific words follow the general, not just where the general words follow the specific. See, e.g., McClellan v. Health Maint. Org. of Pa., 686 A.2d 801, 806 (Pa. 1996) (“Where the opposite sequence is found, i.e., specific words following general ones, the U.S. Supreme Court and the courts from several other jurisdictions recognize that the doctrine is equally applicable, and restricts application of the general term to things that are similar to those enumerated.”). {14} We recognize that the principle of ejusdem generis “is only an instrumentality for ascertaining the correct meaning of words when there is uncertainty” and that the principle “may not be used to defeat the obvious purpose of legislation.” State v. Johnson, 2009-NMSC-049, ¶ 20, 147 N.M. 177, 218 P.3d 863 (quoting Gooch v. United States, 297 U.S. 124, 128 (1936)). We do not believe that our reading defeats the obvious purpose of Section 32A-4-3(A), which is to protect children. {15} The reporting requirement, which was not originally mandatory, first appeared in 1965, when the Legislature enacted the Act Relating to the Protection of Children (the Act). 1965 N.M. Laws, ch. 157. The Act provided that certain categories of professionals “may report” to the district attorney their suspicions of child abuse, neglect, or starvation. 1965 N.M. Laws, ch. 157, § 2. The purpose of the Act was “to provide for the protection of children who have had physical injury inflicted upon them and who, in the absence of appropriate reports concerning their condition and circumstances, may be further threatened by the conduct of those responsible for their care and protection.” 1965 N.M. Laws, ch. 157, § 1. Though the purpose is stated broadly, in our view the Legislature intended to strike a balance, imposing a duty on only those people who were most likely to encounter abused and neglected children in their professional capacities. In that vein, we note that Section 32A-4-3(A) does not prohibit anyone from reporting their suspicions but simply does not place upon them an affirmative duty. {16} Our reading of the mandatory reporting requirement is supported by the fact that the statute imposes criminal penalties on those who are subject to the reporting requirement and fail to report. See § 32A-4-3(F) (stating that a person who violates Section 32A-4-3(A) is guilty of a misdemeanor). Because this statute is defining criminal conduct — the failure to report a reasonable suspicion of child abuse or neglect — we construe any doubts about its applicability in favor of lenity. See State v. Ogden, 1994-NMSC-029, ¶ 25, 118 N.M. 234, 880 P.2d 845 (“Statutes defining criminal conduct should be strictly construed, and doubts about construction of criminal statutes are resolved in favor of lenity.”). In any event, we note that this statute does not give a clear and unequivocal warning to everyone that they could be exposed to criminal penalties for failing to report a reasonable suspicion of child abuse or neglect. See In re Gabriel M., 2002-NMCA-047, ¶ 20, 132 N.M. 124, 45 P.3d 64 (noting the rule of lenity “requires us to narrowly construe a penal statute to give clear and unequivocal warning in language that people generally would understand concerning actions that would expose them to penalties”). {17} In support of its broad reading of the words “every person,” the State cites State v. Mendez, 2010-NMSC-044, 148 N.M. 761, 242 P.3d 328, and Wilcox v. New Mexico Board of Acupuncture & Oriental Medicine, 2012-NMCA-106, 288 P.3d 902. We are not persuaded by the application of either case here. In Mendez, our Supreme Court noted in a parenthetical that Section 32A-4-3(A) “requires] every person, including medical professionals, who suspect that a child has been abused or neglected to immediately report the matter to authorities.” Mendez, 2010-NMSC-044, ¶ 37. The Court did not discuss Section 32A-4-3(A) in any meaningful way, let alone in depth, and we will not read the parenthetical as an authoritative interpretation supporting the State’s view. See Rocky Mountain Life Ins. Co. v. Reidy, 1961-NMSC-100, ¶ 17, 69 N.M. 36, 363 P.2d 1031 (noting that language unnecessary to resolution of issues is dictum and “not binding as a rule of law”), {18} In Wilcox, we noted that “[i]t is true that a statute which uses the word ‘including’ ... is not limited in meaning to that included” and cited a New Mexico Supreme Court opinion for the proposition that “the use of the word ‘includes’ to connect a general clause to a list of enumerated examples demonstrates a legislative intent to provide an incomplete list of activities.” 2012-NMCA-106, ¶ 13 (alterations, internal quotation marks, and citations omitted). However, in that case, we went on to state that “the doctrine of ejusdem generis holds that where general words follow words of a more specific meaning, the general words are not construed in their widest extent but are instead construed as applying to persons or things of the same kind or class as those specifically mentioned.” Id. (internal quotation marks and citation omitted). That is the principle of statutory construction applicable here, and as discussed above, it is in accordance with legislative intent. {19} Consequently, we conclude that neither Defendant’s social worker nor Defendant’s ex-wife was subject to the mandatory reporting requirement set forth in Section 32A-4-3(A). The statutory requirement does not apply to every person, but instead applies to the ten categories of people listed and other professionals or government officials who are likely to come into contact with abused and neglected children during the course of their professional work. 2. Defendant’s Social Worker Was Not Acting in an Official Capacity {20} The State next argues that even if the mandatory reporting requirement does not apply to every person, Defendant’s social worker was still subject to the requirement because he was “a social worker acting in his official capacity” when he provided counseling to Defendant. The State claims that a social worker is acting in an official capacity within the meaning of Section 32A-4-3(A) “when he is working as a counselor or in his capacity as a professional.” Defendant counters that his social worker was not acting in an official capacity when he provided counseling to Defendant because the phrase “official capacity” is intended to include only social workers acting as government employees or contractors. Once again, we agree with Defendant. {21} The term “official capacity” is not defined in the Abuse and Neglect Act. See NMSA 1978, § 32A-4-2 (2009). We thus look to the dictionary definition for guidance. See State v. Boyse, 2013-NMSC-024, ¶ 9, 303 P.3d 830 (“Under the rules of statutory construction, we first turn to the plain meaning of the words at issue, often using the dictionary for guidance.”); see also Nick R., 2009-NMSC-050, ¶¶ 18-19 (interpreting the word “weapons” by consulting dictionaries). {22} Black’s Law Dictionary defines “official” as “[o]f or relating to an office or position of trust or authority” or “[ajuthorized or approved by a proper authority.” Black’s Law Dictionary 1195 (9th ed. 2009). Similarly, the New Oxford American Dictionary defines “official” as “of or relating to an authority or public body and its duties, actions, and responsibilities!)]” New Oxford Am. Dictionary 1217 (3d ed. 2010). These definitions suggest that the word “official” does not have the equivalent meaning of the word “professional,” as the State contends. Instead, unlike “professional,” the word “official” includes apublic element, connoting a certain authority. {23} This reading is supported by the Legislature’s use of the word “professional” rather than “official” in other statutes. For example, in NMSA 1978, Section 61-31-24 (1989), which is part of the Social Work Practice Act, the Legislature sets forth the circumstances under which a social worker “may disclose any information he has acquired from a person consulting him in his professional capacity.” Section 61-31-24(B) (emphasis added); seeNMSA 1978, § 61-31-1 (2006) (short title); see also NMSA 1978, § 61-9-18 (1989) (describing the privilege afforded to communications made to licensed psychologists or psychologist associates “in the course of [their] professional employment”). {24} Our conclusion that the words “official” and “professional” are not synonymous in this case is also supported by the history and background of Section 32A-4-3(A), which we may consider in determining legislative intent. See In re Gabriel M., 2002-NMCA-047, ¶ 15 (comparing current version of a statute with earlier versions to help determine legislative intent). As discussed above, the reporting requirement first appeared in 1965, when the Legislature enacted the Act Relating to the Protection of Children. 1965 N.M. Laws, ch. 157. The Act provided that certain categories of people “may report” to the district attorney their suspicions of child abuse, neglect, or starvation. 1965 N.M. Laws, ch. 157, § 2. The listed categories of people included “any school teacher or social worker acting in his or her official capacity.” Id. {25} In 1973, the Legislature repealed the reporting requirement in the 1965 Act and enacted a different reporting requirement in the newly created Children’s Code. 1972 N.M. Laws, ch. 97. This new reporting requirement, now mandatory, stated, in pertinent part: Any licensed physician, resident or intern examining, attending, or treating a child, any law enforcement officer, registered nurse, visiting nurse, school teacher or social worker acting in his or her official capacity, or any other person having reason to believe that serious injury or injuries have been inflicted upon a child as a result of abuse, neglect or starvation, shall report the matter immediately[.] 1973 N.M. Laws, ch. 360, § 2(A) (emphasis added). The Children’s Code further made the failure to report suspected child abuse a misdemeanor. 1973 N.M. Laws, ch. 360, § 2(C). {26} In 1993, the Legislature once again repealed the reporting requirement and enacted a new reporting requirement in the newly created Child Abuse and Neglect Act. 1993 N.M. Laws, ch. 77, § 97. The new reporting requirement applied to “[ejvery person, including but not limited to ... a school official or social worker acting in an official capacity.” 1993 N.M. Laws, ch. 77, § 97(A). In 2003, the Legislature made various changes, including deleting the words “not limited to” after “including.” 2003 N.M. Laws, ch. 189, § 1. {27} A review of the legislative history above supports our conclusion that the mandatory reporting requirement was intended to apply to social workers working in school and other government settings only. To view it any other way would make little sense. We note, for example, that the mandatory reporting requirement does not list other professionals who provide therapy and counseling, such as psychologists or psychotherapists who may be privy to confidential communications about abuse and which are made for the purpose of diagnosis and treatment. And while the list does include clergy, who do provide counseling, their duty to report is expressly limited to “information that is not privileged as a matter of law.” Section 32A-4-3(A). {28} We conclude that the mandatory reporting requirement set forth in Section 32A-4-3(A) was intended to apply principally to social workers in school and other government settings, and we discern no basis for expanding the provision to apply to social workers working in a professional capacity as a mental health care provider. We thus agree with Defendant that the social worker from whom he obtained counseling is not subject to the mandatory reporting requirement. B. The Legislature Did Not Intend to Exclude From the Rule 11-504 Privilege Any Information That a Social Worker May Obtain Regarding Child Abuse {29} The State next argues that Defendant cannot invoke the privilege set forth at Rule 11-5 04(B) to prevent disclosure of confidential communications by his social worker because the Legislature intended to exclude from this privilege any information that a social worker may obtain regarding child abuse. The State relies on two statutes in support of this argument, Section 61-31 -24(C) and NMSA 1978, Section 32A-4-5 (2009). Defendant contends that these two statutory provisions are not applicable to criminal proceedings, and we agree. {30} Section 61-31-24(B) sets forth the circumstances under which a social worker “may disclose ... information he has acquired from a person consulting him in his professional capacity.” Section 61-31-24(C) states: Nothing in this section shall be construed to prohibit a licensed social worker from disclosing information in court hearings concerning matters of adoption, child abuse, child neglect or other matters pertaining to the welfare of children as stipulated in the Children’s Code or to those matters pertaining to citizens protected under the Adult Protective Services Act. (Citations omitted.) The State contends that this exception is applicable here because “[t]he present case involves a court hearing concerning child abuse,” The State’s argument ignores the plain language of this statute, which limits the exception to court hearings arising under the Children’s Code or the Adult Protective Services Act, neither of which is at issue here. We therefore will not depart from the plain language of Section 61-31-24(C), and we decline to accept the State’s invitation to interpret the Social Work Practice Act to apply to criminal proceedings. {31} The State also relies on Section 32A-4-5 of the Abuse and Neglect Act, which governs the admissibility of reports into evidence and provides, in pertinent part: In any proceeding alleging neglect or abuse under the Children’s Code resulting from a report required by Section 32A-4-3 ... or in any proceeding in which that report or any of its contents are sought to be introduced in evidence, the report or its contents or any other facts related thereto or to the condition of the child who is the subject of the report shall not be excluded on the ground that the matter is or may be the subject of a physician-patient privilege or similar privilege or rule against disclosure. Section 32A-4-5(A) (citation omitted). The above provision makes clear that it applies in two types of proceedings: (1) proceedings alleging neglect or abuse under the Children’s Code that result from a report filed pursuant to Section 32A-4-3, and (2) proceedings in which a report filed pursuant to Section 32A-4-3 or any of its contents are sought to be introduced into evidence. As we have noted with respect to the Social Work Practice Act, this provision does not apply because this is a criminal case. It is not a case arising under the Children’s Code, and it is undisputed that Defendant’s social worker did not file a report pursuant to Section 32A-4-3. CONCLUSION {32} For the reasons discussed above, we conclude that Defendant has a privilege to refuse to disclose and to prevent his licensed social worker and ex-wife from disclosing confidential communications he made to his social worker for the purpose of diagnosis and treatment. The exception set forth in Rule 11-504(D)(4) does not prevent Defendant from invoking the privilege because neither Defendant’s social worker nor his ex-wife was subject to the reporting requirement set forth in Section 32A-4-3(A). We affirm the district court’s grant of Defendant’s motion for a protective order. {33} IT IS SO ORDERED. LINDA M. VANZI, Judge I CONCUR: CYNTHIA A. FRY, Judge J. MILES HANISEE, Judge (dissenting) The State does not argue on appeal that the district court erred in barring Defendant’s ex-wife from testifying with respect to communications she had with Defendant outside of counseling sessions, and we thus do not consider the issue. The State does not argue on appeal that Defendant cannot claim the privilege set forth in Rule 11-504(B) because he received counseling from a licensed social worker, not a physician or a psychotherapist. Consequently, we do not consider whether a person who is receiving treatment from a licensed social worker can invoke the privilege set forth in Rule 11 -504(B).