# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: __September 3, 2015_____

**NOS. 33,255 & 33,078 (Consolidated)**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**CARLOS HERRERA,**

      Defendant-Appellant.

Consolidated With

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**DANIEL HERRERA,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Douglas R. Driggers, District Judge**

Hector H. Balderas, Attorney General
Yvonne M. Chicoine, Assistant Attorney General
Santa Fe, NM

for Appellee

Robert E. Tangora, L.L.C.
Robert E. Tangora
Santa Fe, NM

for Appellant Carlos Herrera

Jorge A. Alvarado, Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Appellant Daniel Herrera

**OPINION**

**BUSTAMANTE, Judge.**

{1}     Appellants' motion for rehearing is granted.  The opinion filed in this case on August 13, 2015, is withdrawn and this Opinion is substituted in its place.

{2}     In these consolidated cases, Defendants Carlos and Daniel Herrera, brothers, appeal their convictions for kidnapping, aggravated assault, and conspiracy to commit kidnapping. We affirm.

**BACKGROUND**

{3}     Seventeen-year-old Samuel Brown (Brown) and his mother's boyfriend, Joe Azure (Azure), went to Defendant Carlos Herrera's (Carlos) apartment to meet with another person who would help Brown record Brown's music. Defendant Daniel Herrera (Daniel) was also at the apartment. Several other people were also present. Brown and Azure sat at the kitchen counter to wait for the person with the recording equipment. Within a few minutes, Carlos accused Azure and/or Brown of stealing some of his cocaine. An argument ensued. Carlos left the kitchen briefly and returned with Daniel, who picked up a kitchen knife. During the ensuing altercation, Daniel held the knife at Brown's throat. Carlos told Brown and Azure that they could not leave the apartment until the cocaine was found and "yell[ed] and forc[ed] the door

shut as [Brown and Azure] were trying to open it." Daniel told Brown that he was going to kill Brown.

{4} At some point, Carlos made a phone call and within minutes a third man arrived. The parties refer to this man as "Zack." Zack hit Azure over Azure's left eye with a weapon that Azure initially thought was "a sidearm that an officer would carry." Azure testified that later he concluded that the gun was "a BB gun or a pellet gun," but that he "felt [they] were still in danger[.]" Azure required stitches to close the resulting injury. Then, while Zack brandished the gun, Carlos, Daniel, and Zack told Brown and Azure to turn out their pockets, strip to their underwear, and sit on the couch. Carlos, Daniel, and Zack searched Brown's and Azure's clothes for the cocaine and removed the money and identification they found. They copied down the information on Azure's identification and kept Brown's student identification card, as well as Azure's money. Brown testified that Carlos punched Azure repeatedly in the face while Brown sat on the couch and Daniel held the knife to Brown's throat. Azure fell into unconsciousness. When he awoke, he and Brown were told to leave and warned not to call the police. They picked up their clothes and left without putting them on. Brown testified that he and Azure were at Carlos's apartment for at least an hour and a half.

{5} Carlos and Daniel were each indicted for two counts of kidnapping, two counts of aggravated assault, and one count of conspiracy to commit kidnapping, one count of armed robbery, and one count of aggravated battery. Carlos was also indicted for one count of battery. After a jury trial, in which they were tried together, Carlos and Daniel were convicted of all charges except for aggravated battery and armed robbery.

**DISCUSSION**

{6} On appeal, Carlos and Daniel (collectively, Defendants) make the same three arguments. First, they argue that the district court erred in denying their request for a jury instruction on kidnapping based on *State v. Trujillo*, 2012-NMCA-112, 289 P.3d 238, *cert. quashed*, 2015-NMCERT-003, 346 P.3d 1163. Second, they argue that the convictions for aggravated assault and kidnapping violate their right to be free from double jeopardy. Finally, they argue that there was insufficient evidence to support their convictions for kidnapping, aggravated assault, and conspiracy. Carlos does not challenge his conviction for battery.

{7} As a preliminary matter, we first address the State's contention that Defendants' kidnapping jury instruction argument was not preserved, and therefore, "[t]his Court is precluded from considering the question." "Generally, to preserve error on a [district] court's refusal to give a tendered instruction, the [a]ppellant must

3

tender a legally correct statement of the law." *State v. Jernigan*, 2006-NMSC-003, ¶ 10, 139 N.M. 1, 127 P.3d 537. "However, if the record reflects that the judge clearly understood the type of instruction the [d]efendant wanted and understood the tendered instruction needed to be modified to correctly state the law, then the issue is deemed preserved for appellate review." *Id.* Here, the district court heard argument from both parties on the requested instruction and took a recess to examine it and *Trujillo*. In denying Defendants' request, it ruled that "there [are] significant differences in the . . . facts of [*Trujillo*] . . . and this case." We conclude that Defendants' argument was sufficiently preserved in the district court for appellate review.

{8}     However, Defendants failed to ensure that the requested instruction was included in the record proper nor was the substance of the requested instruction read into the trial record. "It is . . . the general rule that an appellate court will decline to review claims of error regarding jury instructions if the instructions are not contained in the record on appeal." *G & G Servs., Inc. v. Agora Syndicate, Inc.*, 2000-NMCA-003, ¶ 17, 128 N.M. 434, 993 P.2d 751; *cf. Trujillo v. Baldonado*, 1980-NMCA-184, ¶¶ 3-4, 95 N.M. 321, 621 P.2d 1133 (considering the propriety of giving jury instructions even though the instructions were not in the record because the instructions given were the uniform jury instructions prescribed by rule). Although

they had an opportunity under Rule 12-209(C) NMRA to supplement the record, Defendants failed to do so, even after the State pointed out the omission in its answer brief. In the absence of the proposed instruction, any statements as to the propriety of the jury instruction would be speculative and akin to an advisory opinion.[1]

{9}    As to the district court's denial of the instruction, we agree with the district court that the facts here are readily distinguishable from those in *Trujillo*. In *Trujillo*, this Court held that "the Legislature did not intend to punish as kidnapping restraint or movement that is merely incidental to another crime." 2012-NMCA-112, ¶ 1. There, the defendant restrained the victim during a two- to four-minute fistfight. *Id.* ¶ 3. We concluded that the defendant's kidnapping conviction must be vacated, stating that, "the factual circumstances of [that] case . . . allowed us to determine as a matter of law that the Legislature did not intend [the d]efendant's conduct to constitute kidnapping." *Id.* ¶ 42. We also observed that the facts there did "not present a 'close call.' " *Id.* ¶ 39.

{10}    Here, Brown testified that Carlos told him and Azure that they could not leave until the cocaine was found and that Carlos prevented them from opening the door to the apartment as they tried to leave. In addition, Brown testified that he and Azure

---

[1]The Uniform Jury Instruction (UJI) Committee has proposed revisions to the UJI for kidnapping based in part on the *Trujillo* holding. *See* Proposed Revisions to the Uniform Jury Instructions for Criminal Cases, *available at* https://nmsupremecourt.nmcourts.gov/rules (*see* Proposal 51).

were prevented from leaving the apartment for between one and a half and two hours. Such a prolonged period of restraint is simply not incidental to or inherent in aggravated assault under any of the tests described in *Trujillo*. *See id.* (applying three tests for kidnapping to the facts in that case). The facts here thus do not present "[a] more complicated factual scenario" that must be submitted to the jury. *See id.* ¶ 42; *State v. Bunce*, 1993-NMSC-057, ¶ 8, 116 N.M. 284, 861 P.2d 965 ("A defendant is entitled to have the jury instructed on his theories of the case if that theory is supported by the evidence.").

{11}    Defendants' remaining arguments are, for the most part, a variation on their first. Defendants argue in essence that there is insufficient evidence to support the kidnapping and aggravated assault convictions because either (1) there is no evidence of the force required for kidnapping beyond that which forms the basis for aggravated assault, or (2) there is insufficient evidence of the use of a deadly weapon required for aggravated assault beyond that which forms the basis for kidnapping. They argue, "Either way, whether the restraint was incidental to the assault, or if the assaults were done in furtherance of the kidnapping, the evidence at most supports only one theory

6

or the other, and thus, can only sustain one conviction or the other."[2] Similarly, Defendants argue that the conduct underlying the kidnapping and aggravated assault convictions was "unitary [because] the same continuous struggle gave rise to the aggravated assault and kidnapping convictions." They maintain that the Legislature did not intend to impose multiple punishments for kidnapping and aggravated assault based on unitary conduct and that, therefore their convictions violate their right to be free of double jeopardy. *See* U.S. Const. amends. V and XIV, § 1; N.M. Const. art. II, § 15; *State v. Armijo*, 2005-NMCA-010, ¶ 15, 136 N.M. 723, 104 P.3d 1114 (stating that in an analysis of double jeopardy, we ask "whether the conduct underlying the offenses is unitary, i.e., whether the same conduct violates both statutes" and then, if the conduct is unitary, "whether the [L]egislature intended to impose multiple punishments for the unitary conduct" (internal quotation marks and citation omitted)).

---

[2]The jury was instructed that each Defendant could be found guilty of a crime even if he did not commit the acts necessary for the crime if "[t]he defendant intended that the crime be committed[,] . . . [t]he crime was committed[, and] . . . [t]he defendant helped, encouraged[,] or caused the crime to be committed." UJI 14-2822 NMRA. Thus, although only Daniel wielded the knife, it is possible the jury found Carlos guilty of the charges related to the knife or found Daniel guilty of charges based on Carlos's conduct, based on an accessory theory. *See State v. Bahney*, 2012-NMCA-039, ¶ 27, 274 P.3d 134 ("[A] person who aids or abets in the commission of a crime is equally culpable and faces the same punishment as a principal." (internal quotation marks and citation omitted)). It is not clear whether the jury so found. Neither Carlos nor Daniel makes an argument based on accessory liability.

{12} We address these two arguments together because their resolution depends on the same analysis: whether there is sufficient evidence of independent factual bases for each conviction. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 (internal quotation marks and citation omitted). In reviewing the evidence, "we resolve all disputed facts in favor of the [s]tate, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *Id.* (internal quotation marks and citation omitted). Likewise, when reviewing whether conduct is unitary in the double jeopardy context, we "indulge in all presumptions in favor of the verdict." *State v. Urioste*, 2011-NMCA-121, ¶ 19, 267 P.3d 820 (internal quotation marks and citation omitted).

{13} The jury was instructed that, in order to convict Defendants for kidnapping, it must find that "[Defendants] restrained or confined [Brown and Azure] by force, intimidation[,] deception; [and Defendants] intended to hold [Brown and Azure] against [their] will[] to inflict physical injury or for the purpose of making the victim[s] do something or . . . keeping the victim[s] from doing something[.]" *See* UJI 14-403 NMRA; NMSA 1978, § 30-4-1 (2003). "The crime of kidnapping is complete

when the defendant, with the requisite intent, restrains the victim, even though the restraint continues through the commission of a separate crime." *State v. Dominguez*, 2014-NMCA-064, ¶ 10, 327 P.3d 1092, *cert. denied*, 2014-NMCERT-005, 326 P.3d 1111.

{14}    The premise behind Defendants' argument is that it was only the brandishing and use of the knife that prevented Brown and Azure from leaving Carlos's apartment. They contend that "[t]he evidence at trial established that in order to recover Carlos'[s] belongings, Daniel held the knife to Brown's throat. That action, in essence, also served to prevent Brown [and] Azure from leaving. "But this premise ignores the other evidence already discussed, to wit, that Carlos shouted at Brown and Azure, told them they couldn't leave until his property was found, and pushed the door shut when they tried to open it. The jury could have found that kidnapping was complete, but continuing, at that point. There was also testimony that Carlos and Daniel prevented Brown and Azure from leaving the apartment for at least an hour and a half and that they made Brown and Azure sit on the couch while they searched for the cocaine. This testimony is sufficient to support the kidnapping verdicts.

{15}    Moreover, the jury could reasonably have concluded that Brown and Azure were confined in the apartment by force or intimidation when Carlos told Brown and Azure that they couldn't leave, yelled at them, and closed the door when they tried

9

to leave, conduct that is independent of and distinct from Daniel's wielding of the knife. *See Urioste*, 2011-NMCA-121, ¶ 28 (holding that there was no unitary conduct where "the jury could reasonably have inferred an independent factual basis for all three of [the d]efendant's convictions" and stating that "we do not second-guess the factual conclusions of a jury"). Since the conduct underlying the two charges was not unitary, our double jeopardy analysis is concluded. *State v. Contreras*, 2007-NMCA-045, ¶ 20, 141 N.M. 434, 156 P.3d 725 ("If the conduct is not unitary, then the inquiry is at an end and there is no double jeopardy violation." (internal quotation marks and citation omitted)).

{16}    As to aggravated assault, the jury was instructed that the following elements must be met:

> 1.    [Defendants] brandished a knife [or] held a knife to the throat of . . . Brown;
>
> 2.    [Defendants'] conduct caused [Brown or Azure] to believe [Defendants were] about to intrude on [their] bodily integrity or personal safety by touching or applying force to [them] in a rude, insolent[,] or angry manner; [and]
>
> 3.    A reasonable person in the same circumstances as [Brown or Azure] would have had the same belief[.]

*See* UJI 14-305 NMRA; NMSA 1978, § 30-3-2(A) (1963). Brown and Azure testified that, after Carlos retrieved him from another room in the apartment, Daniel held the knife at Brown's throat. Brown testified that Daniel told Brown that he was going to

kill Brown. He further testified that Daniel held the knife at his throat while he was sitting on the couch in his underwear and while Azure was being punched by Carlos. Other than their argument that the factual basis for the aggravated assault conviction is the same as that for the kidnapping convictions which we have already addressed, Defendants argue only that there was no evidence that a reasonable person in Azure's position would feel threatened when Daniel held the knife to Brown's throat. We disagree. *See State v. Arrendondo*, 2012-NMSC-013, ¶ 14, 278 P.3d 517 (stating that to convict for assault "the [prosecution's] evidence must satisfy both a subjective and an objective standard"). Azure testified that he and Carlos were "yelling back and forth at each other" about the missing cocaine and that they continued arguing while Daniel held the knife to Brown's throat. He also testified that he was "maybe about five, six feet" from Brown when Daniel first appeared with the knife and held it to Brown's throat. Brown testified that later Carlos punched Azure repeatedly in the face while Brown sat on the couch and Daniel held the knife to Brown's throat. These facts alone, not to mention others already outlined, are sufficient to support the jury's finding that a reasonable person in either victim's position would believe that his bodily integrity was threatened by Daniel's use of the knife. *See State v. Phillips*, 2000-NMCA-028, ¶ 14, 128 N.M. 777, 999 P.2d 421 (stating that "the jury was free

to use [its] common sense to look through testimony and draw inferences from all the surrounding circumstances" (internal quotation marks and citation omitted)).

{17}	In summary, we conclude that Defendants' convictions for kidnapping and aggravated assault are (1) supported by the evidence and (2) based on independent factual bases such that Defendants' double jeopardy rights are not implicated.

{18}	Finally, Defendants argue that there was insufficient evidence presented to support their convictions for conspiracy to commit kidnapping. "Conspiracy consists of knowingly combining with another for the purpose of committing a felony within or without this state." NMSA 1978, § 30-28-2(A) (1979). A conspiracy may be formed by words or acts. UJI 14-2810(1) NMRA. "In order to be convicted of conspiracy, the defendant must have the requisite intent to agree and the intent to commit the offense that is the object of the conspiracy." *State v. Trujillo*, 2002-NMSC-005, ¶ 62, 131 N.M. 709, 42 P.3d 814 (internal quotation marks and citation omitted). "The agreement need not be verbal, but may be shown to exist by acts [that] demonstrate that the alleged co-conspirator knew of and participated in the scheme." *Id.* A conspiracy "may be established by circumstantial evidence." *Id.*

{19}	Here, Brown and Azure testified that after the argument started, Carlos went into another room and returned with Daniel, who shortly thereafter picked up a knife and held it to Brown's throat. They testified that both Carlos and Daniel made them

12

strip to their underwear and sit on the couch. Finally, both Carlos and Daniel, along with Zack, searched Brown's and Azure's clothes for the cocaine and removed the money and identification they found. Viewed in the light most favorable to the verdict, this testimony supports an inference that Carlos and Daniel worked together to confine Brown and Azure in the apartment. We conclude that the evidence is sufficient to support the convictions for conspiracy to commit kidnapping.

**CONCLUSION**

{20}    We discern no error in the district court's denial of a jury instruction based on *Trujillo*. We also conclude that there was sufficient evidence to support Defendants' convictions for kidnapping, aggravated assault, and conspiracy to commit kidnapping, and that none of the convictions violates the prohibition against double jeopardy. We affirm all of Defendants' convictions.

{21}    **IT IS SO ORDERED.**

_____
                                        **MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**


_____
**JONATHAN B. SUTIN, Judge**


_____
**J. MILES HANISEE, Judge**

13