This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO**,

Plaintiff-Appellee,

v.                                                                      **No. 33,697**

**OSCAR ARVIZO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Briana H. Zamora District Judge**

Hector H. Balderas, Attorney General
Olga Serafimova, Assistant Attorney General
Anne Kelly, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Steven J. Forsberg, Assistant Appellate Defender
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**VIGIL, Chief Judge.**

{1}     The opinion filed in this case on May 19, 2016, is hereby withdrawn and the following substituted therefor. Plaintiff's motion for rehearing is denied.

{2}     Defendant appeals from the judgment and sentence adjudicating him guilty of one count of criminal sexual contact of a minor (CSCM) in the second degree by a person in authority; one count of CSCM in the third degree by a person in authority; and one count of intimidation of a witness. *See* NMSA 1978, § 30-9-13(B)(2)(a), (C)(2)(a) (2004); NMSA 1978, § 30-24-3(A)(3) (1997).We address Defendant's arguments that: (1) his right to a speedy trial was violated; (2) the evidence was insufficient to support a conviction on either count of CSCM; and (3) the evidence was insufficient to support the conviction for bribery or intimidation of a witness. Because this is a memorandum opinion and the parties are familiar with the procedural background and facts, we only set forth those that are pertinent to our analysis. We affirm in part, reverse in part, and remand for resentencing.

I.     BACKGROUND

{3}     On or about December 18, 2009, A.B.'s family went to dinner with her maternal aunt, her aunt's husband—Defendant, and their two sons. Everyone then returned to A.B.'s home for a sleepover. Early in the evening, A.B., who was thirteen at the time, had to take her little sister to the bathroom. As the two of them walked in a line down the hallway, with the smaller child leading the way, they passed Defendant, who then

grabbed A.B.'s left buttock with his hand from behind. A.B. pushed Defendant's hand away and continued to walk to the bathroom. Defendant, who had never touched A.B. that way before, laughed and did not say anything. Not knowing what to do, A.B. came out of the bathroom and did not say anything.

{4}     Later that evening, after the adults went to bed, the four children continued to play on the pull-out couch in the living room. Eventually they all went to sleep on that couch as they had done many times before. At one point, A.B. woke up to find Defendant with his hand in her underwear, touching her genitals. Defendant then whispered in her ear, "I'm looking for your pussy, so I can stick my finger in it." A.B. immediately pushed him off, and Defendant went back to the room where his wife was sleeping. She felt so dirty that she went into her closet and ripped up her pajama pants. She then cried herself to sleep with the lights on, hugging a large tool for protection.

{5}     The next morning, one of Defendant's sons came into A.B.'s room and asked her why she had moved. While A.B. was giving a false explanation, Defendant walked in and after closing the door asked, "Are you going to tell anybody? Because of the shape of the bedroom, Defendant could not see that his son was also in there. A.B.'s father, who happened to be walking by, overheard Defendant and asked, "Tell anybody about what?" Defendant then lied that he had tripped A.B. the previous night,

3

causing her to hurt her knee, and said that he did not want anyone to think he had done it on purpose. Intimidated by Defendant's calmness and confidence, when her father asked her if that was true, A.B. shook her head in agreement.

{6}     It took A.B. more than six months to tell her father what really had happened. Even though her mother came from a big family, Defendant's wife was A.B.'s mother's closest sister, and the two families spent a lot of time together. A.B. did not want to ruin this relationship and was also afraid that no one would believe her. Keeping this secret led her to start cutting herself. One day, when her father, out of helplessness and frustration, decided to take her to a psychiatric hospital, A.B. finally told him what Defendant had done to her.

**II.     DISCUSSION**

{7}     Defendant raises ten issues on appeal. However, in light of our analysis and disposition of the following issues, it is not necessary to address Defendant's remaining arguments.

**A.     Right to Speedy Trial**

{8}     Defendant argues that his right to a speedy trial was violated. This issue was preserved by Defendant's motion to dismiss, which the district court denied.

{9}     In reviewing a speedy trial claim, we weigh the conduct of both the prosecution and the defendant and balance the four factors set forth in *Barker v. Wingo*, 407 U.S.

4

514 (1972). *State v. Garza*, 2009-NMSC-038, ¶ 13, 146 N.M. 499, 212 P.3d 387. Those factors are: "(1) the length of delay; (2) the reasons for the delay; (3) the defendant's assertion of his right; and (4) the actual prejudice to the defendant." *Id*. (internal quotation marks and citation omitted). In our review, "we defer to the district court's factual findings, but then independently evaluate the four *Barker* factors to ensure that the constitutional right has not been violated." *State v. Fierro*, 2012-NMCA-054, ¶ 34, 278 P.3d 541 (internal quotation marks and citation omitted).

**1.      Length of Delay**

{10}      The district court adopted the procedural background and timeline set forth in the State's response to Defendant's motion to dismiss and orally announced its findings of fact. A period of thirty-six months elapsed from the date of the indictment (July 16, 2010) to the date of the trial (July 15, 2013).This constitutes presumptively prejudicial delay and triggers the speedy trial analysis. "A delay of trial of one year is presumptively prejudicial in simple cases, fifteen months in intermediate cases, and eighteen months in complex cases." *State v. Spearman*, 2012-NMSC-023, ¶ 21, 283 P.3d 272.

{11}      The district court determined that this is a complex case for speedy trial purposes; and Defendant properly argues that this factor therefore weighs heavily in his favor. *See State v. Montoya*, 2015-NMCA-056, ¶ 15, 348 P.3d 1057 ("This delay

extends twelve months beyond the fifteen-month presumptive threshold for intermediate cases. . . . Accordingly, we weigh this factor moderately to heavily in [the d]efendant's favor." citations omitted)).

## 2. Reasons for the Delay

{12} The district court found that Defendant stipulated to, or requested, more than twenty of the thirty-six months of delay. The unchallenged finding of the district court is that, "[o]n balance, the bulk of the delay is attributable to the defense. And this weighs against the defense, this prong weighs against the defense."

{13} The only challenge Defendant makes to the district court's findings is the assertion that the delay from a firm trial date of January 20, 2012, to the date of the actual trial that commenced on July 15, 2013, should all be attributed to the State because the January 20, 2012, trial date was reset when the assistant district attorney handling the case left the district attorney's office. However, Defendant cites no authority in support of this assertion, and the district court's unchallenged findings demonstrate that there were several other reasons for this period of delay. In fact, as the State points out, the delay caused by the prosecutor leaving was less than three months, and after the January 2012 trial date was reset, Defendant consented to several additional months of delay. *See State v. Gallegos*, 2009-NMSC-017, ¶ 38, 146 N.M. 88, 206 P.3d 993 (concluding there was no basis to address the defendant's

6

speedy trial argument when no factual evidence or legal authority was presented to contradict the district court's ruling). We therefore reject Defendant's challenge.

**3.    Assertion of the Right**

**{14}**    The district court found that Defendant asserted his speedy trial right twice—when defense counsel filed his entry of appearance on August 27, 2010, and when the motion to dismiss was filed on July 5, 2013, less than two weeks before the trial. In considering this factor, appellate courts "assess the timing of the defendant's assertion and the manner in which the right was asserted." *Spearman*, 2012-NMSC-023, ¶ 31 (internal quotation marks and citation omitted). "We accord weight to the frequency and force of the defendant's objections to the delay and analyze the defendant's actions with regard to the delay." *Id.* ¶ 31 (internal quotation marks and citation omitted). Again, from the time the indictment was filed to the time of trial, substantial periods of delay are attributable to Defendant's stipulations or requests for continuances. *See Montoya*, 2015-NMCA-056, ¶ 22 ("The effect of a defendant's assertion of his speedy trial right may be diluted where his own actions caused the delay."). We therefore accord very little weight in favor of Defendant under this factor.

**4.    Prejudice**

{**15**}     Defendant contends that lost video evidence and the faded memory of three witnesses—A.B., the father, and the mother—interfered with cross-examination. Defendant states that the jury had to be excused three times to refresh A.B.'s recollection.

{**16**}     "Defendant has the burden to demonstrate and substantiate prejudice." *State v. Fierro*, 2014-NMCA-004, ¶ 22, 315 P.3d 319. Defendant fails to demonstrate that the lost video or faded memories prevented him from presenting evidence in his favor. *See State v. Samora*, 2013-NMSC-038, ¶ 27, 307 P.3d 328 ("[The d]efendant does not claim the loss of any exculpatory witnesses, the deterioration of exculpatory evidence, or any other kind of particularized prejudice to his defense. Accordingly, as in *Garza*, we reject [the d]efendant's speedy trial claim."); *State v. Parrish*, 2011-NMCA-033, ¶ 34, 149 N.M. 506, 252 P.3d 730 ("[The d]efendant, however, neither argues nor substantiates how any alleged memory loss prevented exculpatory testimony that would have otherwise been offered."). Defendant has failed to show any particularized prejudice under this factor. *See id.* ¶ 34.

{**17**}     "[T]he substance of the speedy trial right is defined only through an analysis of the peculiar facts and circumstances of each case." *Garza*, 2009-NMSC-038, ¶ 11. While the period of delay weighs in Defendant's favor, the reasons for the delay do not; Defendant's assertion of the right barely weighs in his favor; and Defendant fails

8

to demonstrate prejudice. On balance, we conclude that Defendant's right to a speedy trial was not violated.

**B.      Sufficiency of Evidence for CSCM**

{18}      Defendant argues that there was insufficient evidence to convict him on either count of CSCM. We agree.

{19}      "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Herrera*, 2015-NMCA-116, ¶ 12, 362 P.3d 167 (internal quotation marks and citation omitted). In reviewing a sufficiency of evidence claim, "we resolve all disputed facts in favor of the state, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *Id.* (alteration, internal quotation marks, and citation omitted). "The sufficiency of the evidence is assessed against the jury instructions because they become the law of the case." *State v. Bernard*, 2015-NMCA-089, ¶ 14, 355 P.3d 831 (internal quotation marks and citation omitted).

{20}      CSCM in the second degree and CSCM in the third degree as charged in this case both require, as an essential element, criminal sexual contact "when the perpetrator is in a position of authority over the child and uses that authority to coerce

9

the child to submit[.]" Section 30-9-13(B)(2)(a) (second degree CSCM); Section 30-9-13(C)(2)(a) (third degree CSCM). As charged, the difference between CSCM in the second degree and CSCM in the third degree is that CSCM in the second degree requires contact with unclothed intimate parts of a minor, Section 30-9-13(B), whereas CSCM in the third degree does not require that the intimate parts of the minor be unclothed, Section 30-9-13 (C). Thus, Defendant was found guilty of third degree CSCM for having criminal sexual contact with A.B.'s buttock and second degree CSCM for having criminal sexual contact with A.B.'s unclothed genitals.

{21}    As an essential element for each charge, the State was required to prove beyond a reasonable doubt that "[D]efendant was a relative who by reason of [D]efendant's relationship to [A.B.] was able to exercise undue influence over [A.B.] and used this authority to coerce [A.B.] to submit to sexual contact[.]" We assume, without deciding, that Defendant was in a position of authority over A.B. because he was a close family relative. *See State v. Erwin*, 2016-NMCA-032, ¶¶ 5-10, 367 P.3d 905, *cert. denied*, 2016-NMCERT-003, ___ P.3d ___; *see also* NMSA 1978, § 30-9-10(E) (2005) (defining "position of authority" as "that position . . . over a child").

{22}    The question posed in this case is whether substantial evidence supports a finding that Defendant used his assumed position of authority to coerce A.B. to submit to the sexual contacts. *See State v. Gardner*, 2003-NMCA-107, ¶ 22, 134 N.M. 294,

10

76 P.3d 47 ("Coercion for the purposes of CSCM occurs when a defendant occupies a position which enables that person to exercise undue influence over the victim and that influence must be the means of compelling submission to the contact. Such coercion might take many forms but is less overtly threatening than physical force or threats." (alteration, omission, internal quotation marks, and citation omitted)); *State v. Segura*, 2002-NMCA-044, ¶ 13, 132 N.M. 114, 45 P.3d 54 (holding that the jury must determine whether the "[d]efendant by reason of his position of authority was *actually* able to exercise undue influence over [the c]hild and *succeeded* in forcing or coercing her to submit to sexual contact through the use of that position of authority"); *State v. Trevino*, 1991-NMCA-085, ¶ 4, 113 N.M. 804, 833 P.2d 1170 ("We stated that an authority figure uses his position to coerce a child where the child's submission is the result of undue influence.").

{23}    We find *Segura* as most instructive on whether the evidence supports the CSCM verdicts here. In *Segura*, after the child's father and the defendant, the child's uncle, had been drinking beer all night, they ended up at the defendant's house where the child's father passed out. 2002-NMCA-044, ¶ 4. The defendant sat in a chair beside the child, made sexual overtures, and grabbed her hand and pulled it toward his groin. *Id*. The child pulled her hand away, whereupon the defendant made more sexually explicit comments, turned the child's chair toward him and grabbed the

11

child's hands toward his groin. *Id*. The child again resisted and went to awaken her father. *Id*. Eventually, the child and her father left the defendant's house. *Id*. Under a jury instruction that is virtually identical to the one in this case, we held that in order to find the defendant guilty, "the jury was required to determine beyond a reasonable doubt that [the d]efendant by reason of his position of authority was *actually* able to exercise undue influence over [the c]hild and *succeeded* in forcing or coercing her to submit to sexual contact through the use of that position of authority." *Id*. ¶ 13. Because the child in *Segura* successfully resisted the defendant's attempts to force sexual contact, we concluded the evidence failed to prove the essential element of coercion. We said, "[t]his case is devoid of evidence of actual ability to exercise through a position of authority any undue influence over [the c]hild, thereby succeeding in coercing or causing her to submit to sexual contact." *Id*. ¶ 15. Observing that the child twice, within moments, forcibly resisted sexual contact, we concluded, "[n]o evidence exists that [the c]hild was at all actually unduly influenced to submit to any sexual contact." *Id*.

{24}     Here, Defendant committed CSCM. However, the element of coercion is missing. A.B. was walking in the hallway of her home when Defendant, unexpectedly and without warning, grabbed her buttock from behind. A.B. pushed Defendant's hand away and continued walking to the bathroom. Similarly, A.B. was asleep when

she woke up to discover Defendant touching her unclothed genitals. A.B. immediately pushed Defendant off, and he went back to his own bed. Simply put, the evidence fails to prove that in either case, Defendant used his position of authority to coerce A.B. to submit to criminal sexual contact.

**{25}** The State relies on *Gardner* to persuade us that the evidence supports a finding that Defendant used his position of authority to coerce A.B. to submit to the sexual contacts. We are not persuaded. In *Gardner*, the defendant was an assistant school principal who had regular contact with students and he often hugged them. 2003-NMCA-107, ¶ 2. While acting as an assistant school principal, the defendant hugged three students in such a way as to touch their breasts and touched a fourth on her buttocks. *Id.* ¶¶ 34-37. He was convicted of four counts of CSCM. *Id.* ¶ 2. We concluded that this evidence was sufficient to support a finding of coercion because it "supports the inference that [the d]efendant used his position of authority to gain the trust of the victims, to obtain the opportunity to touch the victims, and to cause them to submit to his unlawful touching." *Id.* ¶ 38. This case is distinguishable. The victims in *Gardner* were coerced by the defendant's position as an assistant school principal into being improperly hugged and touched, whereas A.B. was not similarly coerced by virtue of Defendant's familial relationship to her in this case. In fact, when both sexual contacts took place without warning, A.B. immediately pushed Defendant

13

away. Whereas the evidence in *Gardner* supported a reasonable inference that the defendant there used his position of authority to coerce the victims into close bodily contact (hugging) that he used to effectuate the unlawful sexual touching, the evidence here does not support such an inference.

{26} Having concluded that the evidence failed to prove that Defendant used his assumed position of authority to coerce A.B. to submit to the sexual contacts under the facts of the case—as contained in the jury instructions—does not end our inquiry. The jury was given instructions on the essential elements of simple battery as a lesser included offense to both second and third degree CSCM. *See* NMSA 1978, § 30-3-4 (1963) ("Battery is the unlawful, intentional touching or application of force to the person of another, when done in a rude, insolent or angry manner.").

{27} Because the jury found that the elements of simple battery were proven beyond a reasonable doubt when it found Defendant guilty of each count of CSCM, and the interests of justice would not be served by ordering a new trial, we remand for entry of a judgment and resentencing on two counts of simple battery. *See State v. Haynie*, 1994-NMSC-001, ¶¶ 3-4, 116 N.M. 746, 867 P.2d 416 (holding that an appellate court has authority to remand a case for entry of judgment on a lesser included offense when the evidence fails to prove the higher offense, the jury was instructed on the lesser included offense, the elements of the lesser included offense were necessarily proven

14

to the jury, and the interests of justice are served in doing so); *Segura*, 2002-NMCA-044, ¶¶ 17-18 (remanding for entry of judgment on a lesser included offense of attempted CSCM when evidence failed to prove CSCM by a person in a position of authority). *Cf. State v. Villa*, 2004-NMSC-031, ¶¶ 9-13, 136 N.M. 367, 98 P.3d 1017 (holding that an appellate court may not remand for entry of a judgment and resentencing for a lesser included offense where the jury did not receive an instruction on the lesser included offense).

**C.      Sufficiency of Evidence for Intimidating a Witness**

**{28}**      Defendant argues that the State did not present sufficient evidence to convict him for intimidation of a witness. We disagree.

**{29}**      "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *Herrera*, 2015-NMCA-116, ¶ 12 (internal quotation marks and citation omitted). In reviewing a sufficiency of evidence claim, "we resolve all disputed facts in favor of the state, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *Id.* (alteration, internal quotation marks, and citation omitted). "The sufficiency of the evidence is assessed against the jury instructions

because they become the law of the case." *Bernard*, 2015-NMCA-089, ¶ 14 (internal quotation marks and citation omitted).

{30}     In pertinent part, the jury was instructed that in order to find Defendant guilty of intimidation of a witness, the State was required to prove beyond a reasonable doubt that Defendant "knowingly intimidated/threatened with the intent to keep [A.B.] from truthfully reporting to a law enforcement officer or any agency that is responsible for enforcing criminal laws information relating to: the commission or possible commission of Criminal Sexual Contact."

{31}     Defendant asserts there was no testimony that, the day after the incident when Defendant went to A.B.'s room and asked, "Are you going to tell anybody?" that he did so in an intimidating or threatening manner or made any moves that could be interpreted that way. Defendant further asserts that, in evaluating the evidence, an objective standard, not the subjective opinion of A.B., controls. Viewed in this light, Defendant contends the evidence is insufficient. We disagree.

{32}     Our decision in *In re Gabriel M.*, 2002-NMCA-047, 132 N.M. 124, 45 P.3d 64, is contrary to Defendant's argument. Therein, the defendant worked after school at K-Mart where he set fire to a rack of clothing. *Id.* ¶ 2. Two sisters, who also worked at the K-Mart, had seen the defendant earlier flicking his lighter and making the flame larger. *Id.* While the fire was being extinguished, and all the employees waited

outside, the defendant approached the sisters and told them that if he got into trouble, he would know who told. *Id*. ¶ 5. The defendant argued that there was no evidence that his comment was made for the purpose of keeping the sisters from reporting what they had seen, and therefore the evidence was insufficient to sustain his conviction for intimidating a witness. *Id., ¶* 23. We proceeded to examine whether the evidence presented by the state was sufficient to prove the defendant's intent under Section 30-24-3(A)(3). *Gabriel M.*, 2002-NMCA-047, ¶ 24. The sisters testified they did not tell the fire marshall everything the first time they were interviewed because the defendant was in the room, and because the district court was free to reject the defendant's explanation of why he made the statement, we concluded that the evidence was sufficient to support a finding that the defendant had intimidated the sisters. *Id*. ¶¶ 22-25. In *State v. Fernandez*, 1994-NMCA-056, ¶¶ 35-36, 117 N.M. 673, 875 P.2d 1104, we added that Section 30-24-3(A)(3) does not include "actual intimidation" as an element of the offense, and that it is sufficient if the state proves that the defendant threatened the witness.

{33} Here, Defendant entered A.B.'s room the morning after the incident and after closing the door, asked, "Are you going to tell anybody?" Defendant then lied to A.B.'s father as to what he meant by the question, and A.B. agreed to the lie. A reasonable inference is that Defendant approached A.B. before she had an opportunity to report the incident, at a time when he thought she was alone and vulnerable, and

17

that his statement was an authoritative effort to keep her from reporting the incident. We recognize that this Court must review Defendant's statement and all reasonable inferences in a manner that would support the jury's verdict. *See Herrera*, 2015-NMCA-116, ¶ 12. We conclude, consistent with *Gabriel M.* and *Fernandez*, that the evidence is sufficient to support Defendant's conviction for intimidating a witness under Section 30-24-3(A)(3).

## III.    CONCLUSION

{34}    The two convictions for CSCM are vacated and the case is remanded for entry of a guilty judgment on two counts of simple battery and resentencing on those counts. The judgment and sentence for intimidating a witness is affirmed.

{35}    **IT IS SO ORDERED.**


_____
**MICHAEL E. VIGIL, Chief Judge**


**WE CONCUR:**


_____
**JONATHAN B. SUTIN, Judge**


_____
**TIMOTHY L. GARCIA, Judge**


18